MILWAUKEE CONSTRUCTORS II, a joint venture consisting of Harrison Western Corporation, a Colorado corporation, and Hunzinger Construction Company, a Wisconsin corporation, Plaintiff-Appellant-Cross Respondent,

v.

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT, a municipal body corporate, Defendant-Respondent-Cross Appellant,†

CH2M HILL CENTRAL, INC., an Oregon corporation, Defendant-Respondent.†

Court of Appeals

*No. 92–0002. Oral argument February 9, 1993.—Decided June 2, 1993.*

(Also reported in 502 N.W.2d 881.)

†Petition to review denied.
†Petition to review denied.

For the plaintiff-appellant-cross respondent the cause was submitted on the brief of *William H. Alverson, Michael B. Apfeld* and *Jane C. Schlicht* of *Godfrey & Kahn, S.C.*, of Milwaukee, and by *Francis X. McCullough*, of counsel, of *Watt, Tieder, Killian & Hoffar*, of McLean, Virginia. There was oral argument by *Michael B. Apfeld* and *Francis X. McCullough*.

For the defendant-respondent the cause was submitted on the brief of *Robert J. Smith* and *Hugh N. Anderson* of *Wickwire Gavin, P.C.*, of Madison. There was oral argument by *Brian W. Mullins* of *Wickwire Gavin, P.C.*

For the defendant-respondent-cross appellant the cause was submitted on the brief of *Michael J. McCabe* and *James H. Petersen* of *Milwaukee Metropolitan Sewerage District*, of Milwaukee, and by *Neal J. Sweeney* and *Randall F. Hafer* of *Smith, Currie & Hancock* of Atlanta, Georgia. There was oral argument by *Randall F. Hafer*.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J. Milwaukee Constructors II (MCII) appeals from a final judgment dismissing its cause of action against Milwaukee Metropolitan Sewerage District (MMSD) and CH2M Hill Central, Inc. (CH2M Hill). The trial court dismissed the case based on its conclusion that MCII had intentionally destroyed numerous documents that deprived MMSD and CH2M Hill of relevant information essential to their defense. MCII asserts that the trial court erroneously exercised its discretion in dismissing the case.

MMSD cross-appeals from that part of the final judgment denying its request for photocopying expenses as an allowable cost pursuant to sec. 814.04(2), Stats. The trial court found as a matter of law that sec. 814.04(2) does not authorize photocopying expenses as an allowable cost. MMSD asserts trial court error in that sec. 814.11, Stats., contains specific authority for the allowance of copying costs as a taxable disbursement.

Because we conclude that the trial court erroneously exercised its discretion in sanctioning MCII with a dismissal of its cause of action, we reverse the judgment. Because the judgment is to be reversed, MMSD's cross-appeal regarding copying costs is moot and, therefore, we do not address the issue.

## I. BACKGROUND

This case involves an action by MCII, a joint venture consisting of two general construction contractors—Harrison Western Corporation and Hunzinger Construction Company—to recover approximately $32.5 million in damages resulting from

MMSD's alleged breach on three separate but related contracts.

In the summer of 1984, MMSD, as part of its overall water pollution abatement program, solicited bids for three separate, multi-million dollar contracts, comprising the project known as "Cross Town Interceptor — Phase 1B, CT—8, CT—7 and CT—5/6 Dropshafts and Ancillary Facilities." MCII submitted the lowest responsive bids, and in late December 1984, MMSD awarded MCII all three contracts.

MCII began work on the three projects in the spring of 1985 and completed work in the spring of 1988. MCII had originally planned to complete the projects by the fall of 1986, but alleged groundwater problems delayed completion for several years. MCII also alleged that CH2M Hill, the engineer/construction manager for the projects, hampered completion time by forcing MCII to implement ineffective and time-consuming methods to deal with the groundwater problems.

In late 1987 and early 1988, MCII commenced two separate actions against MMSD. The cases were subsequently consolidated. In June 1989, MCII joined CH2M Hill as a defendant. The parties conducted substantial discovery. In May of 1990, MMSD discovered that Lyle Pearson, an employee of Harrison Western Corporation, one of the MCII joint venturers, had authorized the disposal of over 700 of some 3,900 boxes of documents which MCII had stored in a warehouse operated by Archives, Inc.

On May 25, 1990, MMSD filed a motion for sanctions in connection with MCII's destruction of documents. During June and July 1990, the parties undertook discovery on the destruction of the documents. On September 10, 1990, the matter was argued

before the trial court. Because the trial court had specific questions that it deemed necessary for a determination on the issue of appropriate sanctions, it scheduled another hearing for December 17, 1990. The hearing was subsequently rescheduled for January 28, 1991. At the January 28 hearing, the trial court, without accepting additional evidence or argument from counsel, announced its decision to dismiss MCII's complaint with prejudice, and to award MMSD and CH2M Hill their costs and reasonable attorneys' fees for prosecuting the motion.[1]

MCII filed a motion for reconsideration which was denied by written order on May 15, 1991. MCII now appeals. Additional facts relevant to the disposition of the appeal will be presented below.

## II.  DISCUSSION

### A.  Standard of Review

A trial court's decision to dismiss a cause of action as a sanction is discretionary and will not be disturbed unless the party claiming to be aggrieved by the decision establishes that the trial court has erroneously exercised its discretion. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859, 863 (1991). A discretionary decision will be upheld if the trial court has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstrated

[1] Although MCII was prepared to present further evidence regarding document destruction at the January 28, 1991, "hearing," the trial court received no further evidence and ruled that MCII had acted in callous disregard of the judicial process and, therefore, must be precluded from maintaining its cause of action.

rational process, reached a conclusion that a reasonable judge could reach. *Id.* "The question is not whether this court as an original matter would have dismissed the action; it is whether the circuit court [erroneously exercised] its discretion in doing so." *Id.*

## B. *Application*

Literally hundreds of thousands of documents were generated by MCII or Harrison Western in connection with the three contracts at issue in this lawsuit. Likewise, both MMSD and CH2M Hill also generated thousands of documents concerning the project. What is eminently apparent from the record, however, is that the discovery process was proceeding smoothly until the revelation that MCII had allegedly destroyed relevant documents. The parties had stipulated that all documents capable of discovery, excepting those that were deemed privileged, would be available for review.

A careful consideration of how and why the documents were destroyed is appropriate. Once a thriving company, Harrison Western incurred losses during the mid-1980's that forced it to radically downsize and partially liquidate its operations. As a result, thousands of boxes of Harrison Western's now inactive files had to be stored at Archives, Inc., a storage facility located in Aurora, Colorado. Storage of these documents cost Harrison Western approximately $12,000 per year.

In March of 1989, Donald Bozarth was appointed Harrison Western's Vice President of Finance. In the course of considering options to reduce overhead, Bozarth concluded that he could cut the document storage costs by having them screened for age, obsolescence and duplication. If any of the documents met certain

criteria, they would be destroyed, thus saving the company money.

Bozarth selected Lyle Pearson to perform the task. At the time, Pearson was Harrison Western's purchasing manager. Bozarth selected Pearson because he was the only employee left who was familiar with the company's document generation and distribution practices, its accounting system, the various projects in which the company had been involved, and the names and responsibilities of the persons involved in those projects.

The task, as Bozarth explained to Pearson, was to reduce the inventory of "old, obsolete, and duplicate documents maintained in dead file storage at Archives." At the time, both men were aware of MCII's lawsuit against MMSD and CH2M Hill, and the general nature of the claims. Neither man, however, was cognizant of the fact that MCII had recently added a claim for loss of bonding capacity.[2] Pearson finished his assignment in the second week of February 1990.

As of May 1990, Archives' computer-generated records indicated that 782 boxes had been "deleted." Of these boxes, MMSD narrowed its focus to a list of sixty-two files contained in fifty-two boxes which, it asserted, had "been identified by MMSD's counsel and consultant as being potentially relevant to MMSD's analysis and defense." One box in particular that had been "deleted," entitled "Estimating—Milwaukee Dropshafts I, II, III," ("Dropshafts box") became the focus of great debate among the parties. Indeed, in rendering its decision that MCII's case should be dismissed, the

---

[2] This fact became apparent during the deposition testimony of both Pearson and Bozarth following the document destruction. Thus, it is clear that neither individual had a complete grasp of the discrete claims that had been alleged by MCII.

531

trial court relied heavily on the fact that this box had not been made available. The parties continue to contest the relevance of this box. MCII, however, asserts that irrespective of the relevance question, the "Drop-shafts box" and its contents were never destroyed and are available for the defendants' review.

In dismissing the complaint, the trial court relied on *Struthers Patent Corp. v. Nestle Co.*, 558 F. Supp. 747 (D.N.J. 1981) for its analytical framework.[3] In *Struthers*, the court outlined a five-step process for evaluating an allegation concerning document destruction:

> (i)   identification, with as much specificity as possible, of the documents which were destroyed; (ii) the relationship of those documents to the issues in the present action; (iii) the extent to which such documents can now be obtained from other sources; (iv) whether [the party responsible for the document destruction] knew or should have known at the time it caused the destruction of the documents that litigation against [the opposing parties] . . . was a distinct possibility, and (v) whether, in light of the circumstances disclosed by the factual inquiry, sanctions should be imposed upon [the party responsible for the document destruction] and, if so, what the sanctions should be.

*Id.* at 756. We agree with the trial court that this is an appropriate process to utilize when evaluating the details, significance and sanctions concerning document destruction allegations. In addition, however, in

---

[3] It should be noted that *Struthers* has not been adopted by the Wisconsin Supreme Court. However, the standard in *Struthers* for evaluating an allegation concerning the destruction of documents is sound.

accord with *Trispel v. Haefer*, 89 Wis. 2d 725, 732, 279 N.W.2d 242, 245 (1979), dismissal is a sanction that should rarely be granted and is appropriate only in cases of "egregious conduct." *See also Johnson*, 162 Wis. 2d at 279-80, 470 N.W.2d at 864.

### 1. Finding of egregiousness

█

A finding of "bad faith" or egregious conduct in the context of a document destruction case involves more than negligence; rather, it consists of a conscious attempt to affect the outcome of the litigation or a flagrant, knowing disregard of the judicial process. *See, e.g., Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443 (C.D. Cal. 1984) (destruction of records and computer backup information in violation of an express court order to preserve the specific categories of records destroyed); *Jagmin v. Simonds Abrasive Co.*, 61 Wis. 2d 60, 80-81, 211 N.W.2d 810, 820-21 (1973) (to support rebuttable inference that unavailable evidence was adverse, opposing party must present clear and convincing proof that party intentionally destroyed the evidence).

In the present case, MCII presented affidavits from Bozarth, Pearson and Stephen Johnson, the custodian of the boxes and file cabinets at Harrison Western Corporation's office in Lakewood, Colorado. Bozarth swore that "[t]o the best of my personal knowledge, no documents were destroyed during this process which were relevant to the litigation between Harrison Western and Milwaukee Metropolitan Sewerage District, other than duplicate documents which are maintained elsewhere by Harrison Western." Pearson swore that "I did not deliberately or willfully dispose of original documents relevant to the litigation between

HWC and MMSD. . . . It is my firm belief, . . . that the only documents selected by me for disposal which might be relevant to the litigation between HWC and MMSD were duplicate copies of documents maintained elsewhere by HWC." Finally, Johnson swore that he had located the "Dropshafts box" at the HWC office in Lakewood.

MMSD presented affidavits from Mark Kindy, Karin Manson and David Weekly, Arthur Andersen consultants aiding MMSD in document discovery, swearing that after review of documents stored at Archives, Inc., and after discussions with various Archives, Inc. personnel, they had become "aware that numerous boxes of documents potentially relevant to the dispute between the parties in the above-mentioned action had been destroyed by Archives, Inc. at the direction of HWC." However, neither MMSD nor CH2M Hill presented evidence that MCII had acted to affect the outcome of the litigation, in knowing disregard of the judicial process. Instead, the defendants rely heavily on facts gleaned from deposition testimony. Specifically, the defendants point to the following facts as supporting the contention that MCII's actions were "intentional," "willful," "egregious" and "in bad faith:" (1) MCII had a duty to preserve the documents it destroyed; (2) Bozarth, as a former lawyer, knew the risks of destroying documents during pending litigation; (3) Bozarth failed to implement proper procedures for the document destruction; and (4) MCII's purported justifications for the document destruction, i.e., monetary savings and regular course of business, were meritless.

■

Applying the law to the facts in this case leads us to conclude that the trial court erroneously exercised

its discretion in granting a dismissal of MCII's cause of action. There is no evidence that MCII purposefully sought to impair the defendants' ability to discover information. In fact, the defendants acknowledge in their briefs that MCII disclosed that destruction of documents had occurred. Further, there is no evidence that Bozarth or Pearson, those responsible for the document destruction, sought to affect the outcome of the litigation or flagrantly and knowingly disregarded the judicial process. The inference that MCII's destruction of documents was a deliberate, willful and contumacious disregard of the judicial process simply cannot be drawn from the facts of record. The trial court's conclusion notwithstanding, we hold as a matter of law that MCII's conduct, although volitional and negligent, does not rise to the level of egregiousness that warrants dismissal of the lawsuit.

The defendants also assert that *Furrenes v. Ford Motor Co.,* 79 Wis. 2d 260, 255 N.W.2d 511 (1977), mandates that we uphold the trial court's finding of bad faith on the part of MCII. We disagree. *Furrenes* considered the issue of the appropriateness of the sanction of dismissal for the plaintiff's failure to comply with a court order to produce evidence. The plaintiff in *Furrenes* had initiated a personal injury action against Ford Motor Co. alleging that an accident that he had been involved in occurred as a proximate result of a defectively designed tie rod on a Ford vehicle. *Id.* at 262, 255 N.W.2d at 512. Initially, Furrenes informally agreed to produce the tie rod for inspection by Ford's experts. *Id.* Furrenes failed to produce the tie rod. *Id.* Subsequently, Ford obtained a court order compelling Furrenes to produce the tie rod. *Id.* Again, Furrenes refused to comply. *Id.* Ford then moved for dismissal.

*Id.* at 263, 255 N.W.2d at 512. The trial court, however, gave Furrenes an extension within which to produce the tie rod. *Id.* Furrenes did not produce the tie rod and the case was dismissed. *Id.* On appeal, the supreme court concluded:

> In the case before us, the original order for production of a tie rod for inspection and testing was ignored for approximately eight months. Even then the successor trial judge refused dismissal and extended the date for production of the tie rod and the expert's report, clearly and specifically warning the plaintiff that the consequence of noncompliance would be dismissal on the merits.
>
> The plaintiff did not comply, nor did he seek modification or extension as to the deadline for compliance. The consequence of dismissal on the merits—of which the plaintiff had prior notice—was proper and appropriate. No abuse of trial court discretion is present.

*Id.* at 268, 255 N.W.2d at 515. In the present case, there was no discovery order concerning the production of the documents in question.[4] Thus, *Furrenes* does not apply under the present factual scenario.

### 2. Finding of prejudice

[4] Both sides agree that the majority of actions properly sanctioned by dismissal are those involving a flagrant disregard of court orders. *See, e.g., Englewood Community Apartments Ltd. Partnership v. Alexander Grant & Co.*, 119 Wis. 2d 34, 38, 349 N.W.2d 716, 718 (Ct. App. 1984) (before a court can dismiss a complaint, it must determine that the party's failure to comply with a discovery order is due to willfulness or bad faith); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443 (C.D. Cal. 1984) (destruction of records and computer backup information in violation of an express court order to preserve the specific categories of records destroyed).

The trial court also concluded that the defendants had been "prevented from presenting a defense and are prejudiced" because "documents essential to determine the validity of plaintiff's claims have been destroyed." This finding fails to consider relevant facts in the record and constitutes an erroneous exercise of discretion. *See Rupert v. Home Mut. Ins. Co.,* 138 Wis. 2d 1, 14, 405 N.W.2d 661, 666 (Ct. App. 1987).

The record indicates that MCII has many of the original copies still stored in its files at HWC's main offices. MCII also presented an affidavit, as well as corroborating evidence, that the "Dropshafts box" was never destroyed and continues to be available for review and copying. Further, the trial court never distinguished between MCII's $3.5 million claim for loss of bonding capacity and its $28.5 million claim for "extras" and other damages directly arising out of the three contracts at issue. Both sides admit that at least a portion of the destroyed documents may be relevant to determine HWC's overall financial condition. Thus, the defendants' ability to defend against the loss of bonding claim may be impaired. It is difficult, however, to ascertain how HWC's financial status is relevant to the underlying contract claims.[5]

---

[5] Due process dictates that a trial court may not dismiss a case in its entirety where only a portion of the claims has been affected by the destruction of documents. A California appellate case cautions:

> While under the statute the court undoubtedly has the power to impose a sanction which will accomplish the purpose of discovery, when its order goes beyond that and denies a party any right to defend the action or to present evidence upon issues of fact which are entirely unaffected by the discovery procedure before it, it not only abuses its discretion but deprives the recalcitrant party of due process of law.

## C. Directions on Remand

■

Although we conclude that dismissal is not warranted, the defendants should not suffer because of MCII's document destruction. Indeed, the trial court continues to have a broad canvas upon which to paint in determining what sanctions are necessary to punish MCII for its negligent conduct. In determining the appropriate sanctions, the conduct of MCII, as well as the needs of the discovering parties in respect to the discrete claims must be evaluated. Specifically, the trial court must consider whether relevant documents were destroyed, whether copies exist, and how the absence of any relevant documents impairs the defendants' ability to establish their pertinent claims or defenses. This court recognizes the difficulty of determining the relevance of and resulting prejudice from destroyed documents due to the fact that they no longer exist. We, however, place great stock in the ability of the trial court to sift through the competing evidence to arrive at a reasonable result.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

■

*Caryl Richard, Inc. v. Superior Court,* 188 Cal. App. 2d 300, 305 (Cal. Dist. Ct. App. 1961).