Deborah BROWN, et al.

v.

EUROCOPTER S.A., American Eurocopter Corp., and Ampep, PLC.

No. CIV.A.G–98–529.

United States District Court, S.D. Texas, Galveston Division.

Aug. 23, 2000.

Francis G Fleming, Brian J Alexander, Andrew J. Maloney, Kreindler & Kreindler, New York, NY, James Housley Furman, Byrd Davis & Eisenberg, Austin, TX, for Deborah Brown, David Nathan Brown, Deceased, Christi Brown, plaintiffs.

Kenneth H. Laborde, Pulaksi Gieger & Laborde, New Orleans, LA, for Wausau Ins. Co., intervenor–plaintiff.

Kenneth Ross Citti, Citti & Associates, Houston, TX, for Eurocopter S.A., Ocopter Corporation, defendants.

Jad J Stepp, Stepp & Sullivan, Houston, TX, Kevin Troy Dossett, Preis Kraft et al, Houston, TX, Lisa J Savitt, Blank Rome et

al, Washington, DC, for Ampep, PLC, defendant.

### ORDER GRANTING PLAINTIFFS' MOTION THAT, ASSUMING DOHSA APPLIES, IT APPLIES AS AMENDED

KENT, District Judge.

Plaintiffs are the surviving widow and daughter of Nathan Brown, a helicopter pilot who was killed along with two passengers when his helicopter crashed into a fixed oil platform in the Gulf of Mexico. Plaintiffs brought suit under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*, contending that state law, via the OCSLA, governed this wrongful death action. The Court rejected Plaintiffs' contention, holding instead that the applicable law was the Death On The High Sea Act, 46 U.S.C. app. § 761 *et seq.* ("DOHSA"). Now before the Court is Plaintiffs' Motion That, Assuming DOHSA Applies, It Applies As Amended, filed June 16, 2000. For the reasons set forth in more detail below, Plaintiffs' Motion is **GRANTED.**

### I. FACTUAL AND PROCEDURAL SUMMARY

At the time of his death, David Nathan Brown was a commercial helicopter pilot for Petroleum Helicopters, Inc. ("PHI"). On November 28, 1996, Brown was flying two platform workers, James Williamson and John Paul Richards, from one fixed platform to another. The flight was conducted pursuant to a contract between Petroleum Helicopters, Inc. and the Samedan Oil Corporation for an "on-demand" helicopter air taxi service.

Brown was flying a Eurocopter AS350B2 helicopter. According to Plaintiffs, during this routine air taxi flight the helicopter's tail rotor pitch change link failed, resulting in violent vibrations and a partial loss of yaw control. Brown radioed that he was experiencing a vibration and that his tail rotor gear box chip detector

was illuminated. Brown advised that he would attempt an emergency landing on the nearest oil platform, the High Island A20, which is located approximately 25 to 30 miles southeast of Galveston, Texas. His first attempt to land on the platform was aborted, with Brown reporting that he was "not able to control the tail rotor." On his second landing attempt, the helicopter collided with the platform, bounced off and sank into the waters of the Gulf of Mexico. The accident claimed the lives of Brown and both his passengers.

Plaintiffs instituted the present suit, seeking recovery under Texas law pursuant to the OCSLA, a statute which imports state law as surrogate federal law for various events transpiring on the Outer Continental Shelf. *See* 43 U.S.C. § 1333(a)(2)(A) (applying the laws of adjacent states to injuries on certain portions of the Outer Continental Shelf "to the extent that they are applicable and not inconsistent with this subchapter or with the other Federal laws and regulations"); *Hufnagel v. Omega Service Indus., Inc.,* 182 F.3d 340, 348 (5th Cir.1999). By an Order dated March 22, 1999, the Court rejected Plaintiffs' contention that OCSLA applies, holding that the applicable law was the Death On The High Sea Act, 46 U.S.C. app. § 761 *et seq.* ("DOHSA"). Under DOHSA, Plaintiff's recovery is limited to "the fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought." 46 U.S.C. app. § 762(a). Consequently, the Court's ruling that DOHSA is the governing law in this suit bars Plaintiffs from recovering nonpecuniary damages which might otherwise have been available under surrogate Texas law. *See id.; Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978)(rejecting plaintiff's attempt to recover for loss of society damages under general maritime law for death on high seas because the Death on the High Seas Act "announces Congress' considered judgment on such issues as the beneficia-

ries, the limitations period, contributory negligence, survival, and damages."); *Zicherman v. Korean Air Lines*, 516 U.S. 217, 231, 116 S.Ct. 629, 637, 133 L.Ed.2d 596 (1996)("Because DOHSA permits only pecuniary damages, petitioners are not entitled to recover for loss of society.").

## II. The DOHSA Amendments

DOHSA provides a cause of action:

whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States . . .

46 U.S.C. app. § 761(a). To the evident surprise of many members of Congress, the United States Supreme Court has recently applied the Death on the High Seas Act to aviation disasters occurring over the high seas. *See Zicherman*, 516 U.S. at 229–31, 116 S.Ct. at 636–37 (holding that mother and sister of woman killed when airplane was shot down over sea of Japan were limited to recovering pecuniary damages, pursuant to DOHSA.); *Dooley v. Korean Air Lines*, 524 U.S. 116, 122–24, 118 S.Ct. 1890, 1894–95, 141 L.Ed.2d 102 (1998)(finding that DOHSA precluded plaintiffs' attempt to recover under general maritime law for passenger's predeath pain and suffering). After the crashes of TWA Flight 800, Swissair Flight 111, and Egyptair 990, all of which occurred off the coast of the Northeastern United States, legislation was advanced in Congress to limit the harsh effect DOHSA had on a plaintiff's ability to recover damages from aviation disasters occurring beyond a marine league from the shores of the United States. On April 5, 2000, the Wendell H. Ford Aviation Investment Reform Act for the 21st Century ("AIR 21"), PL 106–181, 114 Stat. 61, was signed into law.

Section 404 of AIR 21 amends §§ 761 and 762 of DOHSA. Section 761 now includes the following provision:

(b) In the case of a commercial aviation accident, whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas 12 nautical miles or closer to the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, this chapter shall not apply and the rules applicable under Federal, State, and other appropriate law shall apply.

Section 762 of DOHSA now includes the following additional provisions:

(b)(1) If the death resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, additional compensation for nonpecuniary damages for wrongful death of a decedent is recoverable. Punitive damages are not recoverable.

(2) In this subsection, the term "nonpecuniary damages" means damages for loss of care, comfort, and companionship.

Section 404(c) of AIR 21 provides that these amendments to DOHSA shall apply to any death occurring after July 16, 1996.

Brown died in an aviation accident approximately 25 miles off the shore of Texas on November 28, 1996. Plaintiffs contend that the amended DOHSA statute should govern this action, and that they should be permitted to recover damages for loss of care, comfort, and companionship. Defendants contend that § 762(b) of the amended DOHSA statute is inapplicable because Congress did not intend for the phrase "commercial aviation accident" to apply to aviation disasters such as Brown's fatal helicopter crash.

## III. "Commercial Aviation Accident"

AIR 21 reauthorizes various programs of the Federal Aviation Administration ("FAA"), provides funding for certain airport and runway improvements, reforms aspects of FAA management, promulgates

new aviation safety regulations, makes appropriations for aviation research, and proposes study and management plans for aviation over the national parks. Although AIR 21 is a voluminous bill consisting of several hundred pages, the phrase "commercial aviation accident" is not explicitly defined.

*A. Plain Language*

■ "Statutory construction must begin with the language employed by·Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park And Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985); *Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463, 1468 (Fed.Cir.1997) (noting that Congress need not define commonly used terms because they "are deemed to have their ordinarily understood meaning."). Where a statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

■ The legal dictionary definition of "commercial" is that which "relates to or is connected with trade and traffic or commerce in general; is occupied with business or commerce." BLACK'S LAW DICTIONARY 270 (6th ed.1990). "Com-

mercial activities" is defined as "any type of business or activity which is carried on for a profit." *Id.* The term "aviation" is defined as "the operation of heavier-than-air aircraft" WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 119 (1990). Even the Defendants do not contest that Brown's fatal crash comes within the definition of the word "accident." PHI's business is to provide customers, such as the Samedan Oil Corporation, with on-demand air taxi service using heavier-than-air helicopters. The flight that claimed Brown's life was carried out as part of PHI's commercial operations. The inescapable conclusion is that Brown's flight falls within the plain meaning of "commercial aviation accident," and thus the amended DOHSA provisions are applicable.

Of course, it is always possible to propose some recherche definition of a word or phrase and then argue .that the more creative definition should trump the plain and ordinary meaning. Defendants invite the Court to interpret "commercial aviation" to mean something like "regularly scheduled, international jumbo-jet airline service involving tickets and fare paying customers." The Court has no doubt that "commercial aviation" *includes* flights such as these. However, Defendants can point to nothing in the language or structure of AIR 21 which reveals a Congressional intent to *restrict* the meaning of "commercial aviation" to this sort of flight.[1] Nor can

---

1. Indeed, the structure of the amended DOHSA statute tends to undermine Defendants' attempt to restrict the definition of "commercial aviation accident" to aircraft in international travel. AIR 21 is clearly intended to ensure that the victims of "commercial aviation accidents" are afforded a more liberal recovery than that possible under existing law. Under DOHSA as amended, if a death results from a commercial aviation incident more than 12 nautical miles from the shore of the United States, DOHSA still applies, although *some* nonpecuniary damages are now recoverable. *See* 46 U.S.C. app. § 762(b)(1). Punitive damages are expressly disallowed. *See id.* In contrast, if the commercial aviation incident occurs within 12 nautical miles of the shore, DOHSA is now wholly inapplicable: state or federal law applies, and it may

therefore be possible to recover unrestricted nonpecuniary damages or even punitive damages. *See* § 761(b). Heretofore, § 761 made DOHSA applicable beyond a marine league (approximately three nautical miles) from shore. *But cf. Blome v. Aerospatiale Helicopter Corp.*, 924 F.Supp. 805, 814 (S.D.Tex. 1996)(Kent, J.)(holding that DOHSA is inapplicable within three leagues of the shore of Texas because the territorial waters of the Republic of Texas extended to this distance), *aff'd* 114 F.3d 1184. In other words, the more radical ameliorative change introduced by AIR 21 is that DOHSA is now wholly inapplicable to commercial aviation mishaps occurring between three and twelve nautical miles from shore. Thus contrary to Defendants' suggestion, under the terms of the amended DOHSA, an international flight that

Defendants point to any aspect of the legislative history which suggests a legislative intent to adopt a more narrow definition of "commercial aviation." The legislative history clearly reveals an intention to include within the definition accidents involving regularly scheduled, international flights (such as TWA 800), but there is nothing to suggest a desire to restrict the definition beyond what is already implied by the adjectives "commercial" and "aviation." The Court rejects Defendants' artificially narrow definition. "The plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and... ingenuity and study... would discover." *Lynch v. Alworth–Stephens Co.,* 267 U.S. 364, 370, 45 S.Ct. 274, 275, 69 L.Ed. 660 (1925). The Court concludes that Brown's fatal helicopter crash falls under the amended DOHSA statute, given the plain language of that statute.

### B. Federal Aviation Regulations

In addition to the plain language analysis given above, there are other considerations which buttress the Court's conclusion that the amended DOHSA statute applies to the facts of this case. The Court presumes that if Congress does not see fit to provide an express definition of ordinary terms, Congress intends for the undefined statutory language to have a meaning consistent with the background federal regulations already in place which govern the subject matter at issue. Because AIR 21 is largely concerned with reauthorizing programs of the Federal Aviation Administration, the Court naturally looks to the Federal Aviation Regulations ("FAR"), codified in Title 14 of the Code of Federal Regulations.

Part 119 applies "to each person operating or intending to operate civil aircraft as an air carrier or *commercial operator,* or both, in *air commerce...*" 14 C.F.R. § 119.1(a)(1)(emphasis added). The term "commercial operator" is in turn defined to mean:

a person who, for compensation or hire, engage in air commerce of persons or property.... Where it is doubtful that an operation is for "compensation or hire", the test applied is whether the carriage by air is merely incidental to the person's business or is, in itself, a major enterprise for profit.

14 C.F.R. § 1.1. The term "air commerce" is defined to mean:

interstate, overseas, or foreign air commerce or the transportation of mail by aircraft or any operation or navigation of aircraft within the limits of any Federal airway or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce.

*Id.* Part 135 of the FAR applies to certain commuter and on-demand operations via § 119. Part 135 provides:

This part prescribes rules governing the commuter or on-demand operations of each person who holds or is required to hold an Air Carrier Certificate or Operating Certificate under part 119 of this Chapter.

14 C.F.R. § 135.1(a).

The term "on-demand operation" is defined to include "any rotorcraft operation" which is conducted:

for compensation or hire that is... [a] passenger carrying operation[]... in which the departure time, departure location, and arrival location are specifical-

---

comes to grief 100 miles from shore will likely result in a *less* favorable recovery than the crash of a purely domestic commercial flight which occurs a mere four miles from shore. That being so, it is less reasonable to conclude that Congress intended to bestow special favors on the victims of *international* commer-

cial air mishaps than it is to conclude that Congress meant to favor the victims of commercial aviation accidents generally. In any event, if Congress had meant to limit "commercial aviation accidents" to international flights, it could easily have said so.

ly negotiated with the customer or the customer's representative.

14 C.F.R. § 119.3.

PHI's operations, including Brown's fatal flight, were conducted under Part 135 regulations. The National Transportation Safety Board's Factual Report ("Factual Report") of this incident described the operation as "a Title 14 CFR Part 135 flight on demand air taxi." The Factual Report also noted that on September 16, 1996, Brown had "completed recurrent training and demonstrated competency in the Bell 206 helicopter in accordance with FAR 135.295(b)", and that on November 2, 1996, Brown "had completed transition training in the AS250B2 helicopter, and demonstrated competency in accordance with FAR 135.295(b)." As a pilot for PHI, Brown was required to possess a commercial pilot's license. *See* 14 C.F.R. § 61.113(a)("Except as provided in paragraphs (b) through (g) of this section, no person who holds a private pilot certificate may act as a pilot in command of an aircraft that is carrying passengers for compensation or hire . . .").

A Part 135 on-demand air taxi service is plainly a "commercial operation" as that term is used throughout the FAR. Significantly, AIR 21 *itself* references Part 135 with the implication that operations under this Part are "commercial aviation operations." *See* AIR 21, § 713(a)("In this section, the term 'advanced qualification program' means an alternative method for qualifying, training, certifying, and ensuring the competency of flight crews and other commercial aviation operations personnel subject to the training and evaluation requirements of parts 121 and 135 of title 14, Code of Federal Regulations.").

The Court assumes that Congress would not employ an undefined phrase within AIR 21 if it intended for that phrase to have a meaning wildly inconsistent with an old, well-developed, and relevant body of federal regulations. Thus consideration of the Federal Aviation Regulations unavoidably leads to the conclusion that Brown's fatal helicopter crash qualifies as a "commercial aviation accident" as that term is employed in the amended DOHSA statute.

## C. Other Federal Laws and Regulations

In interpreting the meaning of the phrase "commercial aviation accident", the most relevant bodies of law are AIR 21 itself and the Federal Aviation Regulations. However, it is worth noting that the Court's interpretation is broadly consistent with other federal laws and regulations. The Department of the Navy defines "commercial aviation" as "transportation by aircraft of passengers or cargo for hire and the ferrying of aircraft as a commercial venture." 32 C.F.R. § 766.2(c)(1). The Internal Revenue Code defines "noncommercial aviation" as "any use of aircraft, other than use in a business of transporting persons or property for compensation or hire by air." 26 U.S.C. § 4041. Not only are these other laws and regulations consistent with the Court's interpretation, but Defendants cannot point to *any* law or regulation which supports their contention that the amended DOHSA statute is inapplicable to the facts of this case.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion That, Assuming DOHSA Applies, It Applies As Amended is **GRANTED**. Consequently, under the terms of the amended DOHSA statute, the Plaintiffs are entitled to recover nonpecuniary damages for loss of care, comfort, and companionship, if these losses and Defendants' liability are established by competent evidence at trial. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further motions on these issues in this Court, including motions to reconsider or the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United

States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**