Elisabeth EBERLI, Plaintiff,

v.

CIRRUS DESIGN CORPORATION
et al., Defendants.

Case No. 08–60273–CIV.

United States District Court,
S.D. Florida.

May 28, 2009.

Ricardo M. Martinez–Cid, Steven Craig Marks, Aaron Samuel Podhurst, Carolina Maharbiz, Podhurst Orseck Josefsberg et al., Miami, FL, for Plaintiff.

Arnoldo B. Lacayo, Edward Maurice Mullins, Jose I. Astigarraga, Chalon Tamara Allen, Astigarraga Davis Mullins & Grossman, Miami, FL, Courtney Bateman, Reed Smith, Washington, DC, Patrick E. Bradley, Reed Smith LLP, Princeton, NJ, for Cirrus Design Corp.

Amy Furness, Benjamine Reid, Carlton Fields, Miami, FL, for Teledyne Continental Motors, Inc.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment on the Applicability of the Commercial Aviation Section of DOSHA [sic], filed on April 24, 2009. (D.E. 107.) Defendants Teledyne Continental Motors, Inc. ("Teledyne") and Cirrus Design Corporation ("Cirrus") filed their respective Responses in opposition on May 14, 2009. (D.E. 126 & 125.)

THE COURT has considered the Motion and the pertinent portions of the rec-

ord and is otherwise fully advised in the premises. By way of background, this action arises out of the death of Fritz Ernst Schoder after the Cirrus SR 20 aircraft that he was piloting crashed into the Atlantic Ocean off the coast of Greenland. (Pl.'s Statement of Material Facts ("PSMF") ¶ 1.) Mr. Schoder was a licensed commercial pilot and had a valid U.S. commercial pilot license at the time of the accident. (PSMF ¶ 2.) The aircraft that Mr. Schoder was piloting was a new aircraft that had received its export certificate of airworthiness ("COA") on December 26, 2006. (PSMF ¶ 3.) Attached to this COA were special Operating Limitations, which, among other things, required that the aircraft be operated in accordance with 14 C.F.R. Part 91 and prohibited it from being operated to carry passengers or property for compensation or hire. (Def. Cirrus's Statement of Material Facts ("DCSMF") ¶ 13.) At the time of the accident, Mr. Schoder was ferrying the aircraft for delivery to Royal Airport Services Co., Ltd., the Cirrus customer located in Thailand who had purchased the aircraft. (PSMF ¶¶ 4–6.) Cirrus had hired Mr. Schoder to arrange the pick up and delivery of the aircraft, and Royal Airport Services Co., Ltd., had agreed to pay Mr. Schoder for the cost of such services. (PSMF ¶¶ 7–9.)

In her Motion, Plaintiff moves for summary judgment on the applicability of the commercial aviation section of the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 30307. Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to in-terrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court explained in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[1] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the infer-

---

1. Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

ences arising from undisputed facts then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

Plaintiff argues that because Mr. Schoder was ferrying an aircraft as part of a commercial activity carried out for profit and related to commerce, the commercial aviation section of DOHSA, 46 U.S.C. § 30307, applies to this action. Section 30307(b) states:

> In an action under this chapter, if the death resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of the United States, additional compensation is recoverable for nonpecuniary damages, but punitive damages are not recoverable.

46 U.S.C. § 30307(b). According to Plaintiff, the crash of Mr. Schoder's SR 20 aircraft while he was ferrying it for profit qualifies as a "commercial aviation accident" under section 30307(b). Defendants counter that ferrying an aircraft is not commercial aviation for purposes of DOHSA. As the pertinent facts do not appear to be in dispute, the Court need only engage in statutory interpretation in order to determine whether Mr. Schoder's death was the result of a commercial aviation accident within the meaning of section 30307(b).

█ When a statute is clear, a court may not look behind the statute's plain language or resort to rules of statutory construction to determine the legislative intent, as courts must assume that the Legislature knows the meaning of the words used in the statute and to have expressed its intent through the use of the words. *State, Dept. of Revenue v. Lockheed Martin Corp.,* 905 So.2d 1017, 1020 (Fla. 1st DCA 2005) (citations omitted). It is only when a statute is ambiguous that a court may resort to the rules of statutory construction. *BellSouth Telecomms., Inc. v. Meeks,* 863 So.2d 287, 289 (Fla.2003). "Ambiguity suggests that reasonable persons can find different meaning in the same language." *State v. Huggins,* 802 So.2d 276, 277 (Fla.2001) (internal citation and quotations omitted). Administrative construction of a statute, the legislative history of the statute's enactment, and other extraneous matters are properly considered only when the meaning of the statute is in doubt. *Donato v. Am. Tel. & Tel. Co.,* 767 So.2d 1146, 1153 (Fla.2000).

█ Here, having reviewed the statute in question and the parties' arguments, the Court finds that the phrase "commercial aviation accident" is ambiguous, for it

gives rise to at least two different, reasonable interpretations. A "commercial aviation accident" could either be an accident that occurs during the course of aviation involving commerce, as Plaintiff argues, or an accident that occurs during the transportation of passengers or cargo for commercial purposes, as Defendants maintain. Because the disputed phrase is not explicitly defined under DOHSA and can be interpreted to allow two different reasonable meanings, the Court finds that the phrase "commercial aviation accident" is ambiguous.

■ Now that the Court has determined that section 30307(b) is ambiguous, it will examine extrinsic materials in order to determine whether the accident at issue falls within the scope of "commercial aviation accident." The Court first notes that the section of the transportation code which delineates when an aircraft is engaged in commercial or public flight operations defines "commercial purposes" as "the transportation of persons or property for compensation or hire. . . ." 49 U.S.C. § 40125. According to the Operating Limitations attached to the subject aircraft's COA, "[n]o person may operate this aircraft for carrying passengers or property for compensation or hire." (D.E. 125–3 ¶ 3.) Given the above, it appears that the Operating Limitations preclude the subject aircraft from operating for commercial purposes, which indicates that ferrying falls outside the scope of "commercial purposes" because the COA was obtained specifically for the purpose of ferrying. Thus, the Court finds that Mr. Schoder's death during his ferrying of the subject aircraft falls outside the scope of "commercial aviation accident," and, thus, section 30307(b) is inapplicable to this action.

■ The Court disagrees with Plaintiff's argument that Mr. Schoder was a "commercial operator" as defined under the Federal Aviation Regulations ("FAR"). According to the FAR, a commercial operator engages in the carriage by aircraft in air commerce of persons or property for compensation or hire. See 14 C.F.R. § 1.1. Plaintiff contends that Mr. Schoder was carrying property—the aircraft itself—for compensation as part of his ferrying business, and that he, therefore, was a commercial operator engaged in commercial aviation. (Pl.'s Mot. 6–7.) However, given that the Operating Limitations expressly preclude carrying passengers or property for compensation or hire, Mr. Schoder could not be termed a "commercial operator" for purposes of his ferrying of the subject aircraft. In addition, the Court does not see how the subject aircraft could qualify as "property" for purposes of the FAR, considering that the Operating Limitations, which were written with Mr. Schoder's ferrying operation in mind, specifically state that the aircraft cannot be operated to carry property.

Further, the Court finds that Brown v. Eurocopter S.A., 111 F.Supp.2d 859 (S.D.Tex.2000), while the Court does not agree with the analysis therein, is nonetheless distinguishable. Brown involved the crash of a helicopter carrying two passengers as part of an on-demand air taxi service. 111 F.Supp.2d at 860. Thus, unlike the subject aircraft in the case at hand, the helicopter in Brown was being used for commercial purposes at the time of its crash, for it was transporting persons for compensation or hire. See 49 U.S.C. § 40125. Additionally, the helicopter in Brown does not appear to have operated under a COA obtained specifically for non-commercial aviation. As such, the Court declines to follow the decision in Brown.

Finally, a review of the legislative history of the statute supports the Court's in-

terpretation of the statute. There appears to be general agreement that section 30307 was enacted in the aftermath of a number of international air disasters and the lawsuits arising out of such air disasters, in which the families of the victims were denied loss of society damages under DOHSA. Recognizing the unfairness of allowing or denying the families of airline passengers nonpecuniary damages solely on the basis of where the crash occurred, Congress acted to "ensure that all families would be treated the same regardless of where a plane happened to crash." *See* H.R.Rep. No. 105–201, p. 2. Thus, the Court's decision does not undercut the legislative motivation for section 30307. *See id.* ("Under DOHSA, only pecuniary losses are recognized. Therefore, the family of a deceased *passenger* could recover damages for the wages that the person would have received but not for the pain and suffering of that person or the loss of companionship of their loved one.") (emphasis added).

While Plaintiff is correct that nothing in the legislative history suggests a desire to restrict the scope of section 30307 to deaths occurring during flights transporting fare-paying passengers, neither does the legislative history indicate that Congress intended this statute to apply to ferrying accidents. Plaintiff seizes upon the language in the House Reports that laments how families of air crash victims were treated differently prior to the enactment of section 30307 based upon the location of the crash. (*See* Pl.'s Reply 1–2.) However, were it true that this concern—that the families of all air crash victims should be treated the same—was the driving force behind section 30307, the statute would have made nonpecuniary damages recoverable under DOHSA for all aviation-related accidents. The fact that Congress limited the scope of section 30307 to "commercial aviation accidents" leads this Court to believe that Congress wanted the statute to apply only in cases involving the types of aviation disasters, such as the crash of TWA flight 800, that motivated Congress to enact section 30307.

Accordingly, it is

ORDERED AND ADJUDGED that said Motion (D.E. 107) is DENIED. It is further

ORDERED AND ADJUDGED that the commercial aviation section of DOHSA, 46 U.S.C. § 30307, does not apply to this action.