GREENE, Appellant, vs. DONNER, Respondent.

*January 9—February 5, 1929.*

For the appellant there was a brief by *Timlin & Dean,* and oral argument by *Thomas A. Manning,* all of Milwaukee.

For the respondent there was a brief by *Swietlik & Burns* of Milwaukee, and oral argument by *George A. Burns.*

DOERFLER, J.  The first assignment of error of plaintiff's counsel is stated in his brief as follows, to wit: "That under the terms of said contract defendant had no right to terminate said contract or give a notice in reference to the termination thereof until after the expiration of the four-month definite period provided for in said contract." This assignment of error involves a construction of the contract. Under such assignment plaintiff contends that the contract could not be terminated before the 1st day of July, 1926; that instead of being a four-months contract it was a definite contract for at least five months; that by the express language of the contract provision heretofore quoted, no effective notice could be served until after the four-months period had expired; and that if the notice were given after the ex-

piration of four months, the period of limitation in the contract did not become effective until thirty days thereafter.

It must be admitted that the language employed in this contract provision is not as clear and definite as a written instrument of importance like the one in question should be. The statute itself requires a provision fixing a time for the duration of a contract, and such statute has been construed by this court to require a limitation as to time so that from the terms thereof it can be ascertained when the authority of the agent ceases. Sec. 240.10, Stats.; *Brown v. Marty,* 172 Wis. 411, 179 N. W. 602; *Graham v. Lamp,* 174 Wis. 373, 183 N. W. 150.

Under the cardinal rule of construction, we are required to examine the language employed in this contract with a view of determining the intentions of the parties. A careful review and consideration of the contract satisfies us that the parties had in mind a minimum definite term, and that such minimum term consists of four months, and not of five months as argued by plaintiff's counsel. Further examination of the contract reveals that the parties intended that the contract might be terminated by giving a thirty-day notice. A thirty-day notice, if given on or after the 1st of June, would not expire until thirty days after the service of such notice. A thirty-day notice given before the 1st of June would not be effective in any event before the 1st of June, because this latter date is the earliest date at which the contract could be terminated. The portion of the contract which reads, "This contract to remain in force until four months from the date hereof," can serve but one purpose, and that is to fix a minimum term. Unless it serves this purpose it is difficult to perceive what purpose it does serve. If it is intended (and we hold that it is) that the period between February 1st and June 1st constitutes the minimum period, then it follows as a logical inference that if the defendant intended to take advantage of such minimum period she

could do so only by giving the notice at least thirty days prior to June 1st.

In his second assignment of error the plaintiff contends that the evidence shows that no thirty-day notice was given which would terminate the contract on the 1st day of June, assuming that the contract could be terminated by a written thirty-day notice given prior to the 1st of June. The evidence upon this assignment of error is somewhat indefinite and unsatisfactory. We agree, however, with the trial court that there is credible evidence to sustain the defendant's contention that the thirty-day notice was timely given.

In his third assignment of error plaintiff argues that certain instructions given by the court constitute prejudicial error. The defendant claimed that the notice to terminate the tenancy at the end of the four-months period was duly mailed by her agent. Plaintiff and his secretary testified that no such notice was ever received by them. Under these circumstances the court instructed the jury as follows:

"Now, as to the law which will guide and control your consideration of the questions in this special verdict, you are instructed that when a letter is properly addressed and mailed, with postage prepaid, there is a rebuttable presumption of fact that it was received by the addressee as soon as it would be transmitted to him in the usual course of the mail. This rule is founded upon the presumption that officers and employees of the postoffice department will do their duty, and the regularity and certainty with which, according to common experience, mail is usually carried and delivered.

"In connection with these questions and this presumption you will consider all of the evidence in this case, and all of the facts and circumstances which have been made to appear by the evidence upon this trial. *It is the law that testimony of an addressee that a letter was not received should be regarded by a jury with caution where a non-receipt, if found, would cause a benefit to accrue to the addressee.*"

The question of whether a notice was drawn was testified to by the defendant and two of her agents. Defendant was

not present when the stamp was affixed to the envelope or when the notice was deposited in the postoffice. The affixing of the stamp and the depositing of the mail in the postoffice, properly addressed, was supported by two of the witnesses of the defendant. On the other hand, the plaintiff and his secretary, who had charge of the opening of the mail, positively testified that no such notice was ever received at plaintiff's office. To corroborate such testimony of the plaintiff and his secretary, it also appears that after the time of the alleged mailing of the notice the plaintiff continued to advertise the property for sale and otherwise acted in perfect harmony with the idea that no notice had been given. A very close issue therefore presented itself upon the question of the giving of the notice. The presumption of the receipt of the notice which the law raises is a rebuttable presumption. The testimony of an addressee to whom it is claimed that a notice was mailed should be regarded by a jury with caution, as is said in the instruction, where a non-receipt, if found, would cause a benefit to accrue to the addressee. While this is true under the circumstances detailed with regard to an addressee, the principle is likewise applicable to the addressor, and his testimony should be carefully scrutinized where he testifies that he mailed or caused to be mailed the notice, and where the mailing of the notice, if found, would cause a benefit to accrue to him. The parties in a lawsuit are entitled to fairness on each side. It is a matter of common knowledge that jurors look to the court for guidance, and that any instruction which has a tendency to benefit one litigant to the detriment of the other, particularly in a close case like this, must be deemed as constituting prejudicial error.

Under these circumstances we are of the opinion that the judgment of the lower court should be reversed, and the cause remanded for a new trial.

*By the Court.*—It is so ordered.