# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 104

Toman Engineering Company,                                    Plaintiff and Appellee

v.

Koch Construction, Inc. and Marilyn Koch,

Personal Representative of the Estate of

Michael P. Koch,                                    Defendants and Appellants

## No. 20210186

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Daniel J. Borgen, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Justice.

John E. Ward (argued) and David A. Tschider (appeared), Bismarck, ND, for plaintiff and appellee.

Randall J. Bakke (argued) and Bradley N. Wiederholt (on brief), Bismarck, ND, for defendants and appellants.

**VandeWalle, Justice.**

[¶1]   Koch Construction, Inc.; Marilyn Koch, Personal Representative of the Estate of Michael P. Koch; and Koch Property Investments, Inc. (collectively "appellants") appealed from the judgment and amended judgment entered in favor of Toman Engineering Company ("Toman"). The appellants argue the district court erred in deciding they committed intentional spoliation of evidence and dismissing their counterclaim as a sanction. We conclude the district court abused its discretion when it dismissed the appellants' counterclaim as a sanction for spoliation of evidence. We reverse the judgment and remand for a new trial.

I

[¶2]   Michael Koch owned and operated Koch Construction and Koch Property Investments ("KPI"). Michael Koch died in August 2017, and his wife, Marilyn Koch, was appointed the personal representative of his estate.

[¶3]   Toman provided engineering services to Koch Construction on various projects, including designing a stormwater management system for the Koch Meadow Hills residential development project in Dickinson. The stormwater management system included a detention pond referred to as the Marilyn Way Stormwater Pond, which is the detention pond at issue in this case.

[¶4]   In 2016[1], Janet Prchal, Dean Kubas, and Geraldine Kubas, owners of property near the Koch Meadow Hills development, sued the City of Dickinson and KPI for damages, alleging the development of Koch Meadow Hills caused water to drain and collect on their properties. The Prchal lawsuit was settled in September 2018, and the settlement required modifications to be made to

---

[1] The timing of the events in this case are relevant to the issue of notice raised in this appeal.

the Marilyn Way Stormwater Pond before June 30, 2019. The reconstruction work on the detention pond occurred during the summer and fall of 2019.

[¶5]   In November 2017, Toman served a summons and complaint on Koch Construction and Marilyn Koch, as personal representative of the Estate of Michael P. Koch, (collectively "defendants") to collect unpaid amounts for engineering services Toman provided to the defendants. Toman filed the complaint in the district court in June 2019.

[¶6]   On December 7, 2017, the defendants served Toman with an answer and counterclaim requesting monetary damages. The defendants alleged Toman failed to perform and negligently performed the engineering services, causing damages to the defendants, including requiring the defendants to hire other engineering companies to correctly perform the engineering services. The defendants also alleged Toman's negligent performance in properly surveying, designing, and providing for required drainage had caused the defendants damages and subjected them to the Prchal lawsuit. The defendants requested that the district court award damages for Toman's negligence and failure to perform and that the court determine Toman is "liable for Defendant, Koch Property Investment, Inc.'s, attorney's fees and costs, and any and all liability, in [the Prchal lawsuit]." On June 17, 2020, the defendants and non-party KPI moved for leave to serve an amended counterclaim.

[¶7]   On August 3, 2020, Toman moved for sanctions for spoliation of evidence. Toman argued the defendants willfully modified the Marilyn Way Stormwater Pond before giving Toman any notice that the defendants were claiming Toman improperly designed the detention pond. Toman argued it was completely deprived of its right to have an independent expert inspect the pond as it existed prior to modification. Toman requested the counterclaim be dismissed as a sanction.

[¶8]   The defendants opposed Toman's motion for sanctions for spoliation of evidence. They claimed that the Marilyn Way Stormwater Pond is located on public property open to inspection at all times; the pond was reconstructed to bring it into compliance with local ordinances and as a settlement condition in

2

the Prchal lawsuit; Toman was on notice of the claimed defects in the pond since the summer of 2014; and Toman was unequivocally put on notice on December 7, 2017, that the defendants were suing Toman for its defective design work on the pond. The defendants claimed the 2019 reconstruction of the pond was not a secret and Toman failed to inspect the pond or have its representatives or experts inspect the pond during that time.

[¶9] On August 24, 2020, the district court ordered that KPI was allowed to join as a necessary party and granted the motion to amend the counterclaim. On August 25, 2020, the defendants and KPI filed an amended counterclaim, listing KPI as a counterclaim plaintiff. They alleged Toman failed to perform and negligently performed engineering services, including design work, construction administration, and construction management work that Toman agreed to perform for or on behalf of KPI and/or Koch Construction. They also alleged they incurred damages as a result of Toman's negligent performance, including the cost of hiring another engineering company, Apex Engineering Group, to correctly perform the engineering services Toman should have performed and the costs of the remedial work to the detention pond.

[¶10] On October 21, 2020, the district court granted Toman's motion for sanctions for spoliation of evidence. The court determined the defendants and KPI were culpable in the destruction of the evidence and ordered dismissal of the counterclaim as a sanction.

[¶11] The defendants subsequently moved to vacate the order dismissing the counterclaim, arguing Toman had advance notice that the detention pond was at issue in the lawsuit and had notice the pond would be reconstructed during the 2019 construction season. Toman opposed the motion. The district court denied the motion.

[¶12] Toman moved to exclude the testimony of Marilyn Koch with respect to the operation, course of business, business practices, and relationship between Koch Construction and Toman which occurred before Michael Koch's death. Toman alleged Marilyn Koch testified that she had no involvement with Koch Construction before Michael Koch's death, she has no personal knowledge, and

3

therefore all testimony related to such matters should be excluded. The defendants opposed the motion. After a hearing, the district court granted the motion to exclude Marilyn Koch's testimony, concluding it was inadmissible because of her lack of personal knowledge.

[¶13] Before trial, Toman moved to exclude evidence associated with the defendants' equitable recoupment and other defenses related to the alleged deficiencies of the Marilyn Way Stormwater Pond, arguing the spoliation sanction dismissing the counterclaim also applied to the defenses. After a hearing, the district court granted Toman's motion, concluding the evidence used for the counterclaim would also be used for the defenses. The court excluded all testimony relating to alleged deficiencies of the detention pond, including the counterclaim and defenses.

[¶14] Toman also moved to exclude the testimony of the defendants' expert witness, Scott Schneider, arguing Schneider cannot provide expert testimony because he lacked personal knowledge and did not conduct an independent analysis of Toman's design of the stormwater detention pond. The district court granted the motion and excluded Schneider's testimony.

[¶15] A jury trial was held, and the jury returned a verdict in favor of Toman and against the defendants. The jury found there was a contract between Toman and the defendants, the defendants breached the contract, Toman did not breach the contract, and Toman was entitled to $181,277.36 in damages as a result of the defendants' breach of contract. Judgment was entered in favor of Toman and against Koch Construction and Marilyn Koch, as personal representative of Michael Koch's estate, for the amount of the damages with interest. The district court later ordered the defendants pay Toman's costs and disbursements in the amount of $26,711.46. An amended judgment was entered.

## II

[¶16] The appellants argue the district court abused its discretion when it determined they committed intentional spoliation of evidence and dismissed

4

their counterclaim and defenses as a sanction. They contend the court erred in making various findings in support of its decision.

[¶17] The district court's decision to impose a sanction for spoliation of evidence will not be reversed on appeal unless the court abused its discretion. *Simmons v. Cudd Pressure Control, Inc.*, 2022 ND 20, ¶ 15, 969 N.W.2d 442. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* The appellant has the burden to prove the district court abused its discretion, and "that burden is met only when it is clear that no reasonable person would agree with the trial court's assessment of what sanctions are appropriate." *Ihli v. Lazzaretto*, 2015 ND 151, ¶ 8, 864 N.W.2d 483 (quoting *Fines v. Ressler Enters., Inc.*, 2012 ND 175, ¶ 15, 820 N.W.2d 688).

A

[¶18] There is a duty to preserve evidence when litigation is reasonably foreseeable. *Simmons*, 2022 ND 20, ¶ 16. Spoliation is the destruction or failure to preserve probative evidence. *See Ihli*, 2015 ND 151, ¶ 8.

[¶19] The district court may exercise its inherent power to sanction when a party violates the duty to preserve evidence and evidence relevant to the lawsuit is destroyed. *Fines*, 2012 ND 175, ¶ 7. Sanctions, including dismissing claims, may be appropriate when relevant evidence is destroyed. *Ihli*, 2015 ND 151, ¶ 8. "The purpose of imposing sanctions for spoliating evidence is to penalize the party who spoliated the evidence, to protect the integrity of the legal process by 'evening the playing field,' and to prevent others from engaging in similar conduct." *Simmons*, 2022 ND 20, ¶ 16. "Sanctions for spoliation of evidence require a case-by-case analysis of the facts and circumstances present in each case." *Ihli*, at ¶ 9 (quoting *Fines*, at ¶ 8).

[¶20] The duty to preserve evidence is not unlimited, and a party may reasonably need to destroy evidence that it has a duty to preserve. Other courts have recognized that under some limited circumstances a custodial party may

5

destroy evidence after discharging the duty to preserve by giving the opposing party notice that allows for a full and fair opportunity to inspect the evidence. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007) (holding the duty to preserve evidence does not continue indefinitely and the district court abused its discretion by sanctioning the insurer for spoliation after the insurer provided the manufacturer with full and fair opportunity to inspect the evidence and the manufacturer disclaimed interest in the evidence); *Miller v. Lankow*, 801 N.W.2d 120, 129 (Minn. 2011) (holding a custodial party with a legitimate need to destroy evidence may be absolved of a failure to preserve evidence by giving the other parties' sufficient notice and a full and fair opportunity to inspect the evidence); *Diversified Concepts LLC v. Koford*, 495 P.3d 755, 766 (Utah Ct. App. 2021) (holding a custodial party may discharge its duty to preserve evidence if it has reasonable grounds for destroying the evidence and provides advance notice to the noncustodial party that allows for a full and fair opportunity to inspect that evidence); *Am. Family Mut. Ins. Co. v. Golke*, 768 N.W.2d 729, 737 (Wis. 2009) (holding a party or potential litigant with a legitimate reason to destroy evidence discharges its duty to preserve relevant evidence within its control by providing the opposing parties with: "(1) reasonable notice of a possible claim; (2) the basis for that claim; (3) the existence of evidence relevant to the claim; and (4) reasonable opportunity to inspect that evidence."). We agree with these jurisdictions.

[¶21] Effective notice includes notice of the potential claim and notice of the intent to destroy the evidence. *See Diversified Concepts*, 495 P.3d at 767. The notice must be "specific enough and be given far enough in advance to allow the noncustodial party to protect itself against the loss of evidence, through a full and fair opportunity to inspect that evidence before its destruction." *Id.* at 766 (internal quotations and citations omitted); *see also Miller*, 801 N.W.2d at 131 (holding the totality of the circumstances are considered to determine whether the custodial party gave notice that was sufficient for the noncustodial parties to protect themselves). "Placing this burden on the custodial party balances the interests of the parties and, if complied with, effectively obviates any need for the court to impose spoliation sanctions." *Diversified Concepts*, at 766.

[¶22] The law cited above is consistent with our prior cases. In *Ihli*, 2015 ND 151, ¶ 1, we held the district court did not abuse its discretion by dismissing the lawsuit as a sanction for the homeowner's spoliation of evidence. We noted the destroyed evidence was within the homeowner's control and the homeowner did not give the opposing party notice of her intent to destroy the evidence until all practical ability to have an expert inspect the evidence was removed. *Id.* at ¶ 14. Similarly in *Fines*, 2012 ND 175, ¶¶ 1, 11, we held the district court did not abuse its discretion by dismissing the homeowner's action as a sanction for spoliation when the evidence was in the homeowner's control, the homeowner did not give the opposing party notice of the intent to destroy evidence until all practical ability to have an expert inspect the evidence was removed, and the homeowner ignored the opposing party's request to delay the destruction of the evidence until the opposing party had an opportunity to inspect.

[¶23] In summary, we conclude the duty to preserve evidence is discharged and the evidence may be destroyed if the custodial party has a legitimate need to destroy the evidence and has provided sufficient notice to the other parties allowing for a full and fair opportunity to inspect the evidence. Sufficient notice includes notice of the claim and notice of the intent to destroy the evidence. The district court may not sanction for spoliation of evidence if these conditions have been met and the duty to preserve evidence has been discharged.

[¶24] However, when the district court determines a party has violated the duty to preserve evidence, the court should consider the following factors to determine an appropriate sanction: "1) 'the culpability, or state of mind, of the party against whom sanctions are being imposed;' 2) 'a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case;' and 3) 'the availability of less severe alternative sanctions.'" *Ihli*, 2015 ND 151, ¶ 9 (quoting *Bachmeier v. Wallwork Truck Ctrs.*, 544 N.W.2d 122, 124-25 (N.D. 1996)). Dismissal of the entire case with prejudice is the most restrictive sanction and may be appropriate when spoliation is willful or merely neglectful. *Ihli*, at ¶ 9. But courts are encouraged to employ less severe remedies when they are adequate. *Id.* at ¶ 15.

[¶25] Whether an opposing party had notice before the destruction of the evidence is relevant both in deciding whether the duty to preserve was discharged and in considering whether there was prejudice to the non-custodial party for purposes of determining an appropriate sanction. Other courts have held it may be inappropriate to sanction the custodial party if the opposing party had sufficient knowledge to protect its interests and failed to take any steps to inspect or preserve the evidence before it was destroyed. *See Miller*, 801 N.W.2d at 131-32 (holding the failure of the custodial party to provide further notice of the destruction should not deprive it of an otherwise valid claim or defense if the noncustodial party had sufficient knowledge to protect their interests but still failed to inspect the evidence). Even when the custodial party has not met requirements to discharge the duty to preserve, a court may still consider the type of notice provided in determining an appropriate sanction. *See Diversified Concepts*, 495 P.3d at 769. "[I]f the custodial party fails to discharge its duty to preserve evidence, but the noncustodial party is nevertheless on notice of specific facts that render its failure to take any steps to preserve or inspect evidence unreasonable, there will be less cause for the court to remedy a situation that the noncustodial party failed to prioritize." *Id.* at 773.

B

[¶26] In this case, the district court found the appellants spoliated evidence and dismissed their counterclaim as a sanction. The court explained:

> The Court finds the [defendants and KPI] culpable in the modifications of the Pond. Marilyn Koch, in her capacity as the president of Koch Property Investments, Inc., entered into the Settlement Agreement for the Prchal lawsuit knowing it involved retaining Apex Engineering to modify the Pond. As the named defendant in this case, Marilyn Koch knew of the present litigation when she entered into the agreement, making her culpable.
> The Court finds that Toman is prejudiced by the modification of the Pond. The [defendants and KPI] took no efforts to preserve the evidence. Rather, [the defendants and KPI] entered into an agreement regarding the modification of the Pond. [They] did so

8

without providing [Toman] any notice of the destruction of the Pond.

. . . [A]t the time of the modification of the Pond, Toman had no notice that the [counterclaim] related to the Pond, giving Toman no reason to inspect the Pond. . . . The [defendants' and KPI's] broad Counterclaim did not specifically identify the cause of the alleged damages and failed to make any reference to the Pond.

Because Toman did not have notice of the claim regarding the Pond, it was unable to have an expert inspect the allegedly improperly functioning pond. The Pond no longer exists as it did at the time of the alleged damages. Toman cannot examine the Pond or have experts observe, inspect, or test the Pond. The Court finds this prejudicial to [Toman]. The Court cannot expect Toman to defend the Counterclaim without any opportunity to have an expert inspect the Pond. The Court finds the [defendants' and KPI's] spoliation of the evidence highly prejudicial to Toman.

There is no less severe alternative sanction. All information existing relating to the Pond would come from Apex Engineering. Toman's expert witness can only view the evidence through the lens of the [defendants' and KPI's] engineers. The Court finds this prevents Toman from fully defending against the Counterclaim.

. . . .

The [defendants and KPI] had possession and control over the Pond when it was destroyed. When Marilyn Koch negotiated the settlement of the Prchal lawsuit, which included the modification of the Pond, she was aware of the present litigation. The [defendants and KPI] failed to provide Toman any notice of the modification of the Pond, leaving Toman no ability to have an expert inspection. Additionally, the spoliation factors weigh in favor of Toman. The Court finds that dismissal of the Counterclaim is the proper sanction for the [defendants' and KPI's] destruction of the evidence.

[¶27] In denying the defendants' motion to vacate the order dismissing the counterclaim, the district court considered the defendants' argument that Toman had actual notice of the destruction of the detention pond because Toman's counsel requested a copy of the settlement agreement in the Prchal lawsuit from the City of Dickinson, stating:

9

[T]he [defendants and KPI] failed to file any documents in the present case that would have provided Toman notice of the destruction of the Pond. Even if the Court would consider the open records request sufficient notice of the destruction, that notice would be irrelevant to Toman without knowledge that the Pond was the source of the alleged damage to the [defendants and KPI]. Toman had no reason to have experts investigate the Pond prior to learning the [defendants and KPI] were alleging the Pond was improperly engineered, which occurred only after the destruction of the Pond. Without notice of the specific damages the [defendants and KPI] were alleging, any notice of the destruction of the Pond was insufficient. As the Court concluded in its *Order* on sanctions, the [defendants and KPI] failed to provide notice of their specific claim for damages prior to the destruction of the Pond.

Further, an open records request does not absolve the [defendants and KPI] of their duty to preserve evidence. The [defendants and KPI] were aware of the present litigation and had an obligation to preserve the Pond. . . . The [defendants and KPI's] destruction of the Pond was prejudicial to Toman, especially when Toman was unaware of the specific cause of the alleged damages from the [defendants' and KPI's] broad Counterclaim that failed to make reference to the Pond.

[¶28] The district court gave a detailed explanation of its decision and considered the proper factors to determine a sanction for spoliation. However, the evidence does not support some of the findings that were the basis for the court's decision.

[¶29] Evidence established the detention pond was constructed in 2012. In July 2014, Toman was sent an email about a meeting in which neighbors of the Koch Meadow Hills development, including Janet Prchal and Dean Kubas, expressed concerns they had with the water drainage from the development. The email stated the neighbors claimed water was running onto their properties, silt was damaging their properties, and the pond outlet damaged their fence. The email also stated the neighbors wanted a "wet pond" to be created, which they believed would solve a lot of the issues they were seeing, and the parties involved in the meeting were working on "restitution for the perceived damages."

[¶30] On December 7, 2017, the defendants' answer and counterclaim in this action was served on Toman. The counterclaim alleged Toman failed to perform and negligently performed the engineering services it agreed to provide and Toman's "negligent performance in properly surveying, designing, and providing for required drainage has caused Defendants damages, and subjected Defendants to a lawsuit brought by Janet Prchal, Dean Kubas, and Geraldine Kubas, against the City of Dickinson and Koch Property Investments, Inc., Case No. 45-2016-CV-00357." The defendants requested an order "[d]etermining [Toman] is liable for Defendant, Koch Property Investment, Inc.'s attorney's fees and costs, and any and all liability, in Case No. 45-2016-CV-00357."

[¶31] On September 20, 2018, KPI and the City of Dickinson entered into a settlement agreement in the Prchal lawsuit. The agreement required modifications to the Marilyn Way Stormwater Pond and stated, "[KPI] is responsible for the construction work on the pond, one-hundred percent (100%) of the construction costs and will continue to be responsible for maintaining the pond." The agreement also required KPI to make all reasonable efforts to complete the work on the pond "as soon as possible but no later than June 30, 2019."

[¶32] In a letter dated October 30, 2018, Toman's attorney requested from the City's attorney a copy of the settlement agreement in the Prchal lawsuit. The letter stated, "Some of the allegations in this matter relate to [the Prchal case]." In a letter dated November 5, 2018, the City's attorney sent Toman's attorney a copy of the settlement agreement. The reconstruction of the detention pond was complete sometime in fall 2019.

[¶33] The appellants argue they did not have possession or control over the destroyed evidence because the City of Dickinson had sole ownership of the pond, including when the decision was made to reconstruct it, and therefore the City had both possession and control of the pond at all relevant times. They claim they had no ability to control whether the pond was reconstructed or over the City's requirement that the work be performed by a certain date. They also

11

claim the detention pond is located on public property and Toman had access to it at all times.

[¶34] Although the City may own the detention pond and the pond may be on public property, the terms of the Prchal settlement agreement required KPI to be responsible for the construction work modifying the detention pond and to continue to maintain the pond. The evidence supports the district court's finding that the pond was in KPI's custody and control, and it was responsible for the construction work on the pond that destroyed the evidence. *Cf. Golke*, 768 N.W.2d at 743 (stating insurance company did not own the home at issue, but had a duty to preserve the evidence and it provided sufficient notice and an opportunity to inspect). Under the facts and circumstances of this case, the district court did not err in finding KPI had possession and control over the pond when it was destroyed. The appellants had a duty to preserve the evidence.

[¶35] The appellants may not have had the ability to delay the construction work modifying the pond, but the settlement agreement was reached in September 2018, and there was no evidence the work began on the pond until sometime in mid-2019. The appellants had the ability to provide Toman with notice the evidence was going to be destroyed with sufficient time to inspect the evidence. There is no evidence in the record that the appellants provided any notice to Toman that the evidence was going to be destroyed. The appellants had the burden to show they gave adequate notice to Toman before the evidence was destroyed to discharge their duty to preserve the evidence. The appellants did not provide sufficient notice the evidence was going to be destroyed, and therefore they violated the duty to preserve the evidence.

[¶36] Although the appellants did not provide Toman with sufficient notice to discharge the duty to preserve the evidence, evidence established Toman had sufficient knowledge to protect its interests, which is relevant in determining an appropriate sanction. Evidence in the record established Toman had notice of the defendants' claims in December 2017 when it was served with the counterclaim. The counterclaim did not explicitly mention the Marilyn Way Stormwater Pond, but it specifically referenced the Prchal litigation and

12

requested Toman pay for any and all liability KPI incurred related to the Prchal suit. The detention pond was specifically at issue in the Prchal lawsuit. The City's attorney sent Toman a copy of the settlement agreement in the Prchal lawsuit in November 2018 at Toman's request. The settlement agreement required construction work on the pond to be completed by June 30, 2019. By November 2018, Toman had notice of the claims, that the pond was relevant to the claims, and that the pond would be modified. The pond was located on public property and there was no evidence access to it was limited. Toman had sufficient time to inspect the pond before the modifications were made. Toman failed to act or take any steps to protect its interests. Under these facts and circumstances, dismissal of the counterclaim was not an appropriate sanction.

C

[¶37] We conclude the district court abused its discretion in dismissing the counterclaim as a sanction for appellants' spoliation of evidence. Under these circumstances, dismissal as a sanction was too severe.

[¶38] Furthermore, there were at least two asserted claims related to the detention pond. The appellants alleged Toman was negligent in designing the detention pond and in its construction management of the project. Toman alleged the detention pond was not constructed as Toman designed the project. The appellants have conceded that the detention pond was not constructed as Toman designed. Because the pond was not constructed as designed, the destroyed evidence was not relevant to the counterclaim alleging Toman negligently designed the stormwater management system, and the court erred in dismissing or limiting evidence related to the design portion of the counterclaim as a spoliation sanction.

[¶39] Although we concluded dismissal of the counterclaim was not an appropriate sanction, we also concluded the appellants violated the duty to preserve evidence and the district court may consider a less severe sanction on remand. The court also limited the defendants' defenses against Toman's claims as a result of its spoliation decision. The court must also reconsider that

13

decision on remand. We conclude the judgment must be reversed and a new trial held.

## III

[¶40] Although we have concluded the district court erred in dismissing the counterclaim as a sanction for spoliation and we are reversing and remanding for a new trial, we will address remaining issues that are likely to arise again on remand. *See Quamme v. Quamme*, 2021 ND 208, ¶ 12, 967 N.W.2d 452.

[¶41] The appellants argue the district court abused its discretion by excluding testimony from an expert witness, Scott Schneider. They contend Schneider would have testified the stormwater runoff curve used to design the pond was incorrect and the design would not have met the city's ordinance even if the pond had been built as designed. They claim Schneider's testimony would have allowed the jury to award their counterclaim damages for Toman's professional negligence, determine they did not breach the contract, and offset all or part of Toman's damages.

[¶42] Rule 702, N.D.R.Ev., allows an expert witness to testify in the form of an opinion or otherwise if the expert's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. The court has discretion in deciding whether to allow expert witness testimony, and the court's decision will not be reversed on appeal unless the court abused its discretion. *Klein v. Estate of Luithle*, 2019 ND 185, ¶ 3, 930 N.W.2d 630.

[¶43] Scott Schneider, the operations manager at Apex Engineering Group, was called as a witness out of the presence of the jury to allow the district court to determine if he should be allowed to testify, and the court decided to exclude his testimony. His deposition was also submitted as an offer of proof.

[¶44] Schneider testified he did his own pre-development modeling so he could develop a solution to mitigate the concerns of neighboring property owners, he compared the information from his model to the information in Toman's model, and his pre-development modeling produced different results than the Toman pre-development modeling produced. He testified his model of the pre-

development peak flow rate for water showed some type of control structure would likely be needed to control the water to meet the city ordinance for stormwater management criteria. He testified he reviewed the reports for Toman's stormwater management design and those types of control structures were not used in Toman's design.

[¶45] Schneider also testified that Toman's design worked on paper and that in the design report Toman's design met the city ordinances requiring the post-development water runoff to be no more than the predevelopment rates. During Schneider's deposition he testified Toman's reports showed its plans met the city ordinances, but Apex's model showed higher pre-development flow rates than Toman's reports showed and in his opinion the Toman design still would have been short of meeting the requirements of the ordinance if the pond had been constructed as designed. But Schneider later testified to the court that he did not have any personal knowledge Toman's design would not have worked and that he would not be able to provide an expert opinion Toman's design was deficient in any way. He testified that he would be able to testify about the pond as-constructed, but he would not be able to testify about the design. The court asked Schneider if he could testify to the jury that there was a problem with Toman's design and it would not work, and Schneider said, "No, not the design."

[¶46] Schneider's testimony was inconsistent. The district court ruled it would not allow Schneider to testify and the evidence was excluded under Rule 702 because the issue was whether Toman's design was defective, Schneider told the court he never ran Toman's models as designed and would not be able to testify if the design was defective. The court did not abuse its discretion. However, because Schneider testified that he could provide testimony about the pond as constructed, his testimony may be relevant to other issues on remand and the court may reconsider completely excluding his testimony.

IV

[¶47] The appellants argue the district court erred by excluding Marilyn Koch's testimony regarding the scope of an oral agreement for Toman's services. The appellants contend Toman provided more than engineering

15

services and the court's exclusion of evidence eroded their ability to prove Toman's liability for the improper construction of the pond. A district court's decision to admit or exclude evidence will not be reversed on appeal unless the court abused its discretion. *See Command Ctr., Inc. v. Renewable Res., LLC*, 2021 ND 59, ¶ 21, 956 N.W.2d 755.

[¶48] The district court excluded Marilyn Koch's testimony about the business practices and relationship between Koch Construction and Toman occurring before Michael Koch's death. The court found Marilyn Koch's deposition testimony established her lack of personal knowledge. The court explained Marilyn Koch repeatedly confirmed during her deposition that she was not involved in the Koch entities prior to her husband's death and she had no personal knowledge about negotiations or agreements between Toman and Koch Construction. The court also found Marilyn Koch has no personal knowledge about the alleged agreements for Toman to provide oversight and management of the construction of the storm water detention system. The court determined Marilyn Koch's testimony about Michael Koch's business practices and habits was not admissible under N.D.R.Ev. 404 because her involvement in the entities was limited to payroll and quarterly reports and therefore the testimony would be based on hearsay or speculation. The court also determined Marilyn Koch's testimony was not admissible under N.D.R.Ev. 701 as an opinion by a lay witness or under N.D.R.Ev. 804 as an exception to the hearsay rule. The court concluded Marilyn Koch's testimony was inadmissible due to her lack of personal knowledge.

[¶49] Marilyn Koch's deposition testimony supports the district court's findings about her lack of personal knowledge. We conclude the court did not abuse its discretion by excluding Marilyn Koch's testimony related to the scope of the oral agreement for Toman's services.

V

[¶50] Because we are reversing the judgment and remanding for a new trial, we also reverse the costs and disbursements awarded to Toman as the prevailing party. We reverse the judgment and amended judgment and remand for a new trial.

16

[¶51] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte